UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRISCILLA JONES,

            Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

           Defendant.
_____/

Case. No. 17-12666

District Judge George Caram Steeh
Magistrate Judge R. Steven Whalen

**REPORT AND RECOMMENDATION**

    Plaintiff Priscilla Jones ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner ("Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. The parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Dock. #12] be GRANTED and that Plaintiff's Motion for Summary Judgment [Dock. #10] be DENIED.

**I.   PROCEDURAL HISTORY**

    Plaintiff applied for DIB and SSI on July 16, 2014, alleging disability as of June 10, 2012 (Tr. 154, 156). Upon initial denial of the claim, Plaintiff requested an administrative

hearing, held on June 2, 2016 in Flint, Michigan before Administrative Law Judge ("ALJ") Andrew G. Sloss (Tr. 29). Plaintiff, represented by attorney Vicki Corr, testified (Tr. 32-40), as did Vocational Expert ("VE") Kenneth C. Browde (Tr. 41-42). On June 22, 2016, ALJ Sloss found that Plaintiff was capable of performing her past relevant work as a cafeteria service worker (Tr. 15-24). On July 31, 2017, the Appeals Council declined to review the administrative decision (Tr. 1-3). On August 14, 2017, Plaintiff filed suit in this Court.

## II. BACKGROUND FACTS

Plaintiff, born January 15, 1969, was 47 at the time of the administrative decision (Tr. 24, 154). She completed high school and worked previously as a food service worker and printer (Tr. 184). Her application for benefits alleges disability as a result of epilepsy, an enlarged heart, hypertension, depression, anxiety, and strokes in 1989 and 2011 (Tr. 183).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

She held a valid driver's license but did not drive due to seizures (Tr. 32-33). She last worked in 2013 (Tr. 33). Her work as a cafeteria worker required her to serve food and wash dishes (Tr. 33). She was unable to work due to epilepsy and coronary artery disease ("CAD") (Tr. 34). She experienced numbness and tingling of the hands and feet which on occasion caused her legs to give out (Tr. 34). She also experienced unpredictable seizures (Tr. 34). The seizures were characterized by rolling eyes, trembling, and the inability to

focus (Tr. 34). She had approximately two seizures each week (Tr. 35). She noted that before she stopped working, she was told by coworkers that she was having seizures at work (Tr. 35). She took medication for the seizures (Tr. 35).

Symptoms of CAD included shortness of breath and chest pains (Tr. 35). She received treatment from a cardiologist every three months (Tr. 36). She also wore a prescribed wrist brace for Carpal Tunnel Syndrome ("CTS") (Tr. 36). She had not been prescribed a cane, but used it in case her legs gave out (Tr. 36). Plaintiff was able to prepare simple meals and do household chores which could be performed in a sitting position (Tr. 37). She made only short shopping trips and did not attend church regularly (Tr. 37). She spent her waking hours watching television and sitting outside (Tr. 37).

In response to questioning by her attorney, Plaintiff reported that she experienced the medication side effects of dizziness, weakness, and nausea (Tr. 37). She took daily naps (Tr. 37). She experienced interrupted sleep due to the need for bathroom breaks (Tr. 38). Plaintiff, right-handed, was able to lift a gallon of milk with her left hand but less with the right (Tr. 38-39). She was unable to stand for more than 15 minutes at a time or walk for more than one block (Tr. 39). She did not use a computer or smart phone (Tr. 39). She did not drive after experiencing a seizure while driving two years earlier (Tr. 39-40).

### B. The Medical Records

#### 1. Records Related to Plaintiff's Treatment

August, 2012 records by Scott Plensdorf for treatment of an earache note that

Plaintiff was "highly irritable," but did not exhibit neurological symptoms (Tr. 247).

In April, 2014, Nasser M. Sabbagh, M.D. noted that an EEG showed only "mildly abnormal" results (Tr. 270). Dr. Sabbagh noted Plaintiff's allegations of two types of seizures, the first kind involving "staring" and the second, loss of consciousness, eye rolling, shaking, and foaming at the mouth (Tr. 271). She reported that her last seizure was two months earlier (Tr. 271). Dr. Sabbagh noted full muscle strength, a normal gait, and normal neurological testing (Tr. 271). He increased her dosage of anti-seizure medication, noting that she should not drive until she had been seizure free for six months (Tr. 272). A family physician's records from the same month notes Plaintiff's denial of limitation in activities of daily living (Tr. 282).

Dr. Sabbagh's records from the following month note that Plaintiff denied recent seizures despite a failure to increase her medication dosage (Tr. 285, 292). Dr. Sabbagh's records from September, 2014 note Plaintiff's report of two to three seizures a month (Tr. 291). He noted that an April, 2011 MRI of the brain did not show abnormalities (Tr. 291). An October, 2014 stress test showed unremarkable results (Tr. 314). In November, 2014 Dr. Sabbagh noted that 48-hour EEG monitoring showed "relatively frequent epiliptiform discharges" from the left anterior temporal area" (Tr. 479). Plaintiff reported two seizures in two months (Tr. 479).

A January, 2015 EMG of the right upper extremity was consistent with CTS (Tr. 481). In February, 2015, Plaintiff denied shortness of breath (Tr. 437). Dr. Sabbagh's records from

the following month note Plaintiff's denial of seizure activity (Tr. 477). In April, 2015, Plaintiff sought emergency treatment for chest pains (Tr. 325, 411). She exhibited full orientation with a normal mood and affect (Tr. 327). She reported pain after eating (Tr. 330, 358). An EKG and cardiac enzyme testing was negative (Tr. 330, 407). Plaintiff reported that she was pain free upon discharge (Tr. 334). A stress test from the following month was negative (Tr. 452). In June, 2015, Plaintiff reported only intermittent chest pain and shortness of breath (Tr. 406). Cardiac testing was unremarkable (Tr. 406, 446). An MRI of the brain from the following month was normal (Tr. 480). The same month, Plaintiff reported a "possible seizure" the third week of June, 2015 (Tr. 476). An August, 2015 EKG was negative for significant abnormalities (Tr. 316-317). She was diagnosed with "probable" CAD with recurrent atypical angina" (Tr. 312). Her treatment was limited to medication (Tr. 312).

The following month, Dr. Sabbagh noted Plaintiff's denial of recent seizures (Tr. 405, 475). He prescribed a right wrist brace for Plaintiff's report of right hand pain (Tr. 405). He noted that a July, 2015 MRI of the brain was normal (Tr. 405). October, 2015 treating records note a normal mood and affect (Tr. 402). A cardiologist's records from the same month, noting diagnoses of hypertension and probable CAD, were otherwise unremarkable (Tr. 403). A stress test from the same month yielded normal results (Tr. 445). Dr. Sabbagh's December, 2015 records note Plaintiff's report of no recent seizures (Tr. 474).

A cardiologist's January, 2016 records note the absence of chest pain or edema but Plaintiff's report of shortness of breath (Tr. 398). Plaintiff noted that she was a former smoker (Tr. 398). An examination was unremarkable (Tr. 399). Plaintiff was advised to continue the same medication (Tr. 399). Dr. Sabbagh's February, 2016 records note that Plaintiff denied recent seizures (Tr. 473). A cardiologist's April, 2016 records note Plaintiff's denial of current chest pain, finding that "no further cardiac evaluation" was warranted (Tr. 416-417). Dr. Sabbagh's records from the same month note no recurrence of seizures (Tr. 472).

## 2. Non-Treating Sources

In November, 2014, Matthew P. Dickson, Ph.D., performed a psychological assessment on behalf of the SSA, noting Plaintiff's report of seizures two to three times a week (Tr. 307). She reported that she had a stroke 25 years earlier when her first child was born (Tr. 307). She reported that she experienced conflict with another woman while she was working (Tr. 307). She stated that she stopped working because of a "layoff" (Tr. 308). She reported intermittent foot and hand numbness (Tr. 307). She reported taking anti-seizure medication but denied current mental health treatment (Tr. 307). She denied current substance abuse (Tr. 307).

Dr. Dickson noted that Plaintiff was socially appropriate with good eye contact but reported "occasional problems with people" (Tr. 308). She reported that she was able to to shop independently, perform household chores, prepare food, pay bills, and count money

(Tr. 308). Dr. Dickson observed a normal gait, organized speech and a normal mood and affect (Tr. 308-309). He concluded that Plaintiff was mentally capable of performing unskilled work, but noticed "mild memory problems" and that "[p]sychological testing would be necessary to more accurately assess" the cognitive abilities (Tr. 310). He diagnosed Plaintiff with an unspecified communication disorder, noting that further testing should be performed to "rule out" a neurocognitive disorder (Tr. 310).

Later in the same month, Ashok Kaul, M.D. performed a non-examining assessment of Plaintiff's mental condition on behalf of the SSA, finding that Plaintiff experienced mild restriction in activities of daily living and moderate limitation in social functioning and in concentration, persistence, or pace (Tr. 50-51). Dr. Kaul found that Plaintiff experienced moderate work-related limitation in activities related to detailed instructions and in social functioning[1] (Tr. 54-55). The same month Quan Nguyen, M.D. performed a non-examining assessment of Plaintiff's physical condition, finding no exertional limitations but that Plaintiff should be precluded from all climbing of ladders, ropes, and scaffolds and should avoid all exposure to hazards such as machinery and heights (Tr. 52-54).

### C. Vocational Testimony

VE Browde classified Plaintiff's past relevant work as a cafeteria food service worker

---

[1] While Dr. Kaul checked a box indicating that he found some degree of adaptive limitation, he declined to find adaptive limitation in any discrete category of adaptive functioning (Tr. 55-56).

as exertionally light[2] and semiskilled (Tr. 238). The ALJ described a hypothetical individual of Plaintiff's age, education, and work experience with the following limitations:

> [A]ble to perform light work except that she can never climb ladder, ropes, or scaffolds, must avoid all exposure to hazards and must avoid concentrated exposure to vibration. could she perform her past work? (Tr. 41).

The VE responded that the above-described individual could perform Plaintiff's past relevant work (Tr. 41). The VE testified that absences exceeding one each month, or being off task for than 42 minutes of an eight-hour workday, except for lunch breaks and other scheduled breaks, would preclude all work (Tr. 42). He testified that his testimony that Plaintiff could perform her past relevant work was consistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*") (Tr. 42).

### D. The ALJ's Decision

Citing the medical records, ALJ Sloss found that Plaintiff experienced the severe impairments of epilepsy and CTS but that neither condition met or medically equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 17-18). The ALJ found

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

that the conditions of hypertension and CAD were non-severe, noting that the cardiac testing had been normal (Tr. 17-18). He noted that the cardiac problems were treated exclusively with medical therapy "and no further cardiac evaluation was warranted" (Tr. 18). He also found that the impairment of neurocognitive disorder was non-severe (Tr. 18). The ALJ found that Plaintiff had no limitation in activities of daily living, social functioning, or concentration, persistence, and pace (Tr. 18). The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for exertionally light work with the following additional limitations:

> [S]he can never climb ladders, ropes, or scaffolds, and must avoid exposure to hazards. She must also avoid concentrated exposure to vibration (Tr. 19).

Citing the VE's testimony, the ALJ determined that Plaintiff could perform her past relevant work as a food service worker (Tr. 23).

The ALJ discounted Plaintiff's alleged degree of limitation (Tr. 20-23). He noted that her report of twice-weekly seizures stood at odds with Dr. Sabbagh's records showing no seizure activity between June, 2015 and April, 2016 (Tr. 22). He noted that the June, 2015 seizure reported by Plaintiff to Dr. Sabbagh was described as a "'possible'" seizure (Tr. 22). The ALJ discounted Dr. Kaul's non-examining finding that Plaintiff experienced moderate difficulties in social functioning and concentration, persistence, and pace, noting that the findings stood at odds with Dr. Dickson's consultative observations of a normal thought process, independence in activities of daily living, and only mild deficiencies in memory (Tr. 21, 23). He noted that the treating records contained no suggestion of a

psychological limitation (Tr. 22-23).

### III.   STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV.   FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

In her sole argument for remand, Plaintiff disputes the ALJ's Step Four finding that she could perform semiskilled work as required by her past relevant work as a cafeteria worker. *Plaintiff's Brief,* 6-9, *Docket #10,* Pg ID 520.  Specifically, she argues that the ALJ erred by declining to accept the consultative findings by Dr. Dickson and the non-examining findings by Dr. Kaul. *Id.*  Plaintiff notes that the ALJ's finding that she could perform her past semiskilled work stands at odds with Dr. Dickson's finding that she was limited to unskilled work. *Id.*; (Tr. 310).  She also notes that Dr. Kaul's findings that she experienced moderate limitation in social functioning and concentration, persistence, and pace stands at

odds with the ALJ's finding of no psychological limitation . *Id.*; (Tr. 18, 50-51). She argues that Drs. Dickson and Kaul's findings of some degree of psychological limitation are uncontradicted by the remainder of the record. *Id.*

Dr. Kaul's finding of moderate limitation in concentration, persistence, or pace, at a minimum, implies a limitation to unskilled work (Tr. 50-51). Indeed, the courts have found that under some circumstances, a restriction to unskilled work, by itself, is inadequate to account for moderate concentrational deficiencies. *See Ealy v. Commissioner of Social Sec.*, 594 F.3d 504, 516–17 (6th Cir. 2010)(*citing Edwards v. Barnhart*, 383 F.Supp.2d 920, 930–31 (E.D.Mich.2005))(unskilled work, accompanied by the modifiers "'simple'" and "'routine'" "'not adequate to convey moderate limitation in ability to concentrate, persist, and keep pace'").

However, the ALJ's discussion and weight assigned to the findings by Dr. Dickson and Dr. Kaul does not constitute grounds for remand. "[T]he Commissioner has final responsibility for deciding an individual's RFC [and] to require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'" *Rudd v. Commissioner of Social Sec.*, 531 Fed.Appx. 719, 728 (September 5, 2013)(*citing* SSR 96–5p, 1996 WL 374183 (July 2, 1996)).

Likewise here, the ALJ's discussion and conclusions pertaining to Dr. Dickson's and Dr. Kaul's findings do not provide grounds for remand. The ALJ acknowledged Dr. Dickson's finding that Plaintiff was capable of unskilled work (Tr. 21). However, he noted that Dr. Dickson's observations of independence in activities of daily living, "spontaneous and organized" mental functioning, normal affect, and good contact with reality supported the finding that Plaintiff could perform her past semiskilled work (Tr. 23). He accorded Dr. Dickson's findings "great weight" (Tr. 23). While the ALJ did not state that he declined to accept Dr. Dickson's finding that Plaintiff could perform unskilled work, he was not required to discuss all of Dr. Dickson's findings one by one, much less adopt the consultative finding in its entirety in crafting the RFC. *Rudd,* 531 Fed.Appx. at 728; *see also Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. August 26, 1994)(*citing Atterberry v. Secretary of Health & Human Servs.*, 871 F.2d 567, 572 (6th Cir.1989))(one-time consultative finding "entitled to no special degree of deference" particularly where the ALJ "did not simply ignore or discard [the] findings," but instead "discussed those findings in detail and, to a large extent, adopted them").

As to Dr. Kaul's findings, the ALJ noted that the findings of moderate limitation in social functioning and concentration, persistence, and pace (Tr. 50-51) were contradicted by Dr. Dickson's findings and by the record as a whole (Tr. 21-22). The ALJ noted that Dr. Kaul's finding of moderate concentrational limitation stood at odds with the treating record showing that despite Plaintiff's frequent treatment for the cardiac condition, routine

checkups, and minor health conditions, she did not seek mental health treatment (Tr. 22). The ALJ noted that the treating records did not contain a psychiatric diagnosis (Tr. 22). He cited Dr. Sabbagh's records showing that Plaintiff denied anxiety and presented with a normal mood and affect (Tr. 23). The ALJ's finding that Plaintiff did not experience any significant degree of work-related psychological limitation is supported by my own review of the record. For example, while Plaintiff sought and received frequent treatment for the suspected condition of CAD, (despite consistently unremarkable testing results) and received frequent routine checkups for a variety of minor conditions, she did not seek mental health care treatment. Moreover, the existing treating records repeatedly note a normal mood and affect (Tr. 271, 282, 327, 402).

I have also considered Plaintiff's contention that an April, 2014 EEG[3] showing non-specific encephalopathic process supports the finding that she experiences some degree of psychological limitation. *Plaintiff's Brief* at 6. Plaintiff notes that the condition of encephalopathy "can present a very broad spectrum of symptoms that range from mild, such as some memory loss . . . to severe, such as dementia, seizures, coma, or death." *Id*.

However, the records created during the relevant period do not suggest that the mildly abnormal findings translated into any work-related limitation. Dr. Sabbagh's May, 2014 records, note that the results of the EEG showed only "mild" findings "probably [due to a]

---

[3]Incorrectly characterized as an EKG in Plaintiff's brief (Tr. 285). The records cited by Plaintiff are actually found earlier in the transcript (Tr. 285).

medication side effect" (Tr. 285). August, 2012 records note the absence of neurological symptoms (Tr. 247). In April, 2014, Plaintiff reported one seizure in the past two months (Tr. 271). Dr. Sabbagh's records, starting in April, 2014, indicate that Plaintiff experienced infrequent seizure activity between that time and November, 2014 and no seizure activity between November, 2014 and June, 2015 when she reported a "possible" seizure (Tr. 271, 291, 479). Moreover, the records between April, 2014, and November, 2015 (except for a short period prior to September, 2014 where she reported up to three seizures one month) do not suggest that she experienced more than one seizure a month (Tr. 479). The records from September, 2015 forward note the absence of *any* seizure activity (Tr. 405, 472-475). The treating records not only fail to support the presence of a significant psychological limitation but contradict Plaintiff's testimony of frequent seizure activity. The ALJ correctly noted that Plaintiff's claim that she experienced two seizures a week (Tr. 35) was undermined by the medical records indicating that she did not experience any current seizure activity and the earlier notes showed that aside from one brief period, the seizures occurred around once a month (Tr. 22). Accordingly, the ALJ did not err in finding that Plaintiff did not experience significant psychological limitation as a result of either an underlying mental condition or due to epileptic seizures.

Because the determination that the Plaintiff could perform her past relevant semiskilled work is within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen*,

*supra*.

## VI. CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Dock. #12] be GRANTED and that Plaintiff's Motion for Summary Judgment [Dock. #10] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: July 31, 2018

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on July 31, 2018, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager to the
Honorable R. Steven Whalen